**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KARIMA BRYANT, JOSHUA FLANARY, DIEUNIPHERE DELCY, and TELISA WHALEY, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No: 1:23-cv-01294 |
| v. | Honorable Manish S. Shah |
| WALGREEN CO., | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

LEGAL STANDARD ................................................................................................ 2

ARGUMENT ......................................................................................................... 3

    I.      PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS. ..................... 3

          A.     The Complaint Fails to Support a Claim Plaintiff Suffered an Injury In Fact. ............................................................................ 4

          B.     Plaintiffs' Allegations of Economic Injury Are Entirely Conclusory and, in Any Event, Lack a Causal Connection to Walgreens' COBRA Notice. ...................................................... 5

    II.     PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM. ........................... 10

          A.     Plaintiffs' Claims Are Time-Barred. ........................................... 10

          B.     The Manner in Which Plaintiffs Received Notice of Their COBRA Rights Complies with Applicable Law. ....................................... 12

          C.     Walgreens' Notice Contains All Required Information. ..................... 13

                1.     Walgreens provided the address where COBRA payments should be mailed. ....................................................... 13

                2.     Walgreens told Plaintiffs when and how to enroll in COBRA. ................................................................ 14

                3.     The notice sufficiently identified the party responsible for administering COBRA benefits. ................................... 17

                4.     Plaintiffs' catchall allegations that Walgreens' notice would not be understood by the average plan participant are entirely conclusory. ................................................. 18

    III.    WALGREENS' NOTICE DOES NOT CONFLICT WITH THE REGULATIONS AND, IN ANY EVENT, WALGREENS MADE A GOOD FAITH ATTEMPT TO COMPLY WITH THE REGULATIONS. ......... 19

CONCLUSION .................................................................................................... 20

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguilar v. Rexnord LLC,*
　No. 17 CV 9019, 2018 WL 3239715 (N.D. Ill. July 3, 2018) (Shah, J.) ....................................5

*Ali v. Woodbridge Twp. Sch. Dist.,*
　No. CV 17-2210, 2019 WL 1930754 (D.N.J. Apr. 30, 2019) .................................................20

*Apex Digital, Inc. v. Sears, Roebuck & Co.,*
　572 F.3d 440 (7th Cir. 2009) .................................................................................................3

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009)................................................................................................3, 16, 18

*Baker v. Kingsley,*
　No. 03 C 1750, 2006 U.S. Dist. LEXIS 74266 (N.D. Ill. Oct. 10, 2006) ...............................11

*Bazile v. Fin. Sys. Of Green Bay, Inc.,*
　983 F.3d 274 (7th Cir. 2020) ..............................................................................................3, 9

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 544 (2007)...........................................................................................................3, 5, 18

*Bryant v. Wal-Mart Stores, Inc.,*
　No. 16-24818-CIV, 2020 WL 4333452 (S.D. Fla. July 15, 2020) ...........................................7

*Carter v. Gen. Elec. Co.,*
　No. 98 C 50239, 2000 U.S. Dist. LEXIS 3875 (N.D. Ill. Mar. 21, 2000) ..............................11

*Carter v. Sw. Airlines Co.,*
　No. 8:20-CV-1381-T-02JSS, 2020 WL 7334504 (M.D. Fla. Dec. 14, 2020) ..........................8

*Casillas v. Madison Avenue Associates, Inc.,*
　926 F.3d 329 (7th Cir. 2019) ..................................................................................................5

*Clark v. City of Braidwood,*
　318 F.3d 764 (7th Cir. 2003) ................................................................................................10

*Craftwood II, Inc. v. Generac Power Sys., Inc.,*
　920 F.3d 479 (7th Cir. 2019) .................................................................................................3

*Crotty v. Dakotacare Admin. Servs.,*
　455 F.3d 828 (8th Cir. 2006) ................................................................................................20

93121408v.4

*Dunnet Bay Const. Co. v. Borggren*,
    799 F.3d 676 (7th Cir. 2015) ...............................................................................6

*Fritz v. Health & Welfare Dep't of Constr. & Gen. Laborers' Dist. Council of*
    *Chicago & Vicinity*,
    No. 99 C 4747, 2001 WL 34085714 (N.D. Ill. Apr. 6, 2001)..................................11

*Gerber v. A&L Plastics Corp.*,
    No. CV1912717ESCLW, 2021 WL 3616179 (D.N.J. Aug. 16, 2021) ......................6

*Goodman v. Commercial Labor Servs., Inc.*,
    No. 98-CV-1816, 2000 WL 151997 (N.D.N.Y. Feb. 11, 2000) .......................12, 16

*Keegan v. Bloomingdale's*,
    992 F. Supp. 974 (N.D. Ill. 1998) .....................................................................19, 20

*Killis v. Medieval Knights, LLC*,
    No. 04 C 6297, 2007 WL 4302470 (N.D. Ill. Dec. 4, 2007) ............................19, 20

*Larkin v. Fin. Sys. of Green Bay, Inc.*,
    982 F.3d 1060 (7th Cir. 2020) ............................................................................2, 5

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555, 560 (1992)........................................................................................6

*Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*,
    29 F.4th 337 (7th Cir. 2022) .................................................................................7

*Myrick v. Discover Bank*,
    662 F. App'x 179 (3d Cir. 2016) ...........................................................................20

*Ortiz v. Am. Airlines, Inc.*,
    5 F.4th 622 (5th Cir. 2021) ...................................................................................7

*Papasan v. Allain*,
    478 U.S. 265 (1986)...............................................................................................3

*Pierce v. Visteon Corp.*,
    No. 1:05CV1325 LJMJMS, 2007 WL 2986123 (S.D. Ind. Oct. 9, 2007)..............11

*Pierce v. Visteon Corp.*,
    843 F. Supp. 2d 936 (S.D. Ind. 2011) ..................................................................20

*Piercefield v. Int'l Truck & Engine Corp.*,
    No. 1:05CV1873DFHWTL, 2006 WL 2263985 (S.D. Ind. Aug. 7, 2006) ......11, 12

*Pierre v. Midland Credit Mgmt., Inc.*,
    29 F.4th 934 (7th Cir. 2022) .................................................................................4

iii

*Plotkin v. Ryan*,
 No. 99 C 53, 1999 WL 965718 (N.D. Ill. Sept. 29, 1999).......................................................7

*Reed v. Palmer*,
 906 F.3d 540 (7th Cir. 2018) ...................................................................................................3

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016)...........................................................................................2, 4, 5, 8

*Taylor v. McCament*,
 875 F.3d 849 (7th Cir. 2017) ...................................................................................................2

*Thole v. U. S. Bank N.A*,
 140 S. Ct. 1615 (2020)..............................................................................................................4

*Thomas v. Town of Hammonton*,
 351 F.3d 108 (3d Cir. 2003)....................................................................................................20

*Thompson v. Cont'l Cas. Co.*,
 602 F. Supp. 2d 943 (N.D. Ill. 2009) ....................................................................................11

*TransUnion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021)..............................................................................................................4

*Valdivieso v. Cushman & Wakefield, Inc.*,
 No. 8:17-cv-118-T-23JSS, 2017 WL 2191053 (M.D. Fla. May 18, 2017) ............................16

*Wilson v. Sw. Bell Tel. Co.*,
 55 F.3d 399 (8th Cir. 1995) ....................................................................................................16

**Statutes**

735 ILCS 5/13-214.4 ...................................................................................................................11

**Other Authorities**

29 C.F.R. § 2590.606-4(b)(4) ...........................................................................................13, 16, 18

29 C.F.R. § 2590.606-4(b)(4)(i) ............................................................................................17, 18

29 C.F.R. § 2590.606-4(b)(4)(i)–(xiv)..................................................................................12, 14

29 C.F.R. § 2590.606-4(b)(4)(v)..................................................................................................15

29 C.F.R. § 2590.606-4(b)(4)(xii) ...............................................................................................13

29 C.F.R. § 2590.606-4(g)....................................................................................................13, 14

85 FR 26351 (May 4, 2020)............................................................................................................9

iv

Black's Law Dictionary (10th ed. 2014) .........................................................................13

93121408v.4

Plaintiffs, four former Walgreen Co.'s ("Walgreens") employees, assert in this putative class action that Walgreens violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide them and the putative class members with a COBRA notice that complies with the law. Plaintiffs lack standing to bring their claims, which, in any event, fail to state a claim. The Court should grant Walgreens' motion and dismiss the complaint.

Plaintiffs' claims turn on the contention that Walgreens failed to provide them sufficient information to enroll in COBRA coverage, that they failed to enroll in that coverage as a result of the information they did not receive, and that they suffered resulting harm in the form of unpaid medical bills. Those claims are totally belied by reference to the notices Plaintiffs admit Walgreens sent them, which provided Plaintiffs with all required information with ample time for Plaintiffs to enroll in coverage.

Plaintiffs allege that, upon termination of their respective employment, each of them received at least two documents from Walgreens, containing information about their rights to enroll in COBRA benefits. Their claims in this case, however, assert that, if you consider just the information found in one of those documents, Walgreens did not provide them sufficient information to make a decision about enrolling in COBRA benefits, and caused them "harm" in the form of lost insurance coverage and purported medical expenses. Plaintiffs' claims should be dismissed.

As a preliminary matter, Plaintiffs' claims should be dismissed for lack of standing. Claiming an "informational" injury without adverse effects cannot satisfy Article III. Plaintiffs must be able to show concrete harm, caused by Walgreens' alleged conduct, likely to be remedied by a favorable decision. Plaintiffs cannot make this showing, however, because the

harm they claim—the failure to enroll in COBRA coverage—cannot reasonably be said to have resulted from the breaches they claim Walgreens committed. Plaintiffs admit that they each received a notice—attached to their complaint—that states:

> **Action Needed!**
> You must enroll in COBRA health coverage by May 4, 2019 on Benefits Support Center at **www.BenefitsSupportCenter.com** or by calling the Benefits Support Center at 1-855-564-6153. If you don't enroll, you'll lose this opportunity.

(ECF 7-1 at 1.) Plaintiffs do not claim any of them logged on to the Benefits Support Center website, or that they ever called the phone number provided to them to enroll in coverage. Absent any attempt to enroll in coverage, Plaintiffs cannot claim *Walgreens'* actions caused them to lose health insurance, and their claims thus fail for a lack of standing.

Even apart from their lack of Article III standing, Plaintiffs' complaint fails to state a viable claim. First, Plaintiffs' allegations establish that, to the extent any of them ever had viable claims, those claims are now time-barred. Second, Plaintiffs admit to having received documents that contain all of the information the regulations require. The viability of their claim, then, depends on the flawed premise that Walgreens was required not just to provide certain COBRA-related information to Plaintiffs, but to do so in a single document. Nothing in the law or regulations elevates form over substance in the way that Plaintiffs' complaint suggests.

## **LEGAL STANDARD**

A motion under Rule 12(b)(1) contests the court's subject-matter jurisdiction. A court lacks subject-matter jurisdiction if a plaintiff doesn't have standing. *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). "To establish standing, a plaintiff has the burden to establish that [he or she] has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling.'" *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (quoting *Spokeo, Inc. v.*

*Robins*, 578 U.S. 330, 338 (2016)). A challenge to standing can take the form of a facial or a factual attack on the plaintiff's allegations. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). When a defendant launches a facial attack on standing, the question is "whether the allegations, taken as true, support an inference that the elements of standing exist." *Bazile v. Fin. Sys. Of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (citing *Apex Digital, Inc.*, 572 F.3d at 443–44). A factual attack, however, challenges the accuracy of plaintiff's underlying jurisdictional allegations. *Id.*

If the Court has jurisdiction, then it must proceed to the motion to dismiss for failure to state a claim. *See Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019). Under Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed for failure to state a claim upon which relief can be granted where the plaintiff has not alleged "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" only when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677–78. The plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In deciding a motion to dismiss for failure to state a claim, a court may consider documents attached to the complaint and documents that are referenced in and central to its claims. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

## ARGUMENT

## I.    PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS.

At the outset, Plaintiffs lack standing to assert their claims, because they cannot show they (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

Defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1618 (2020). It is Plaintiffs' burden at the pleading stage to "clearly . . . allege facts demonstrating" they have standing. *Spokeo, Inc.*, 578 U.S. at 338 (citation omitted).

### A. The Complaint Fails to Support a Claim Plaintiff Suffered an Injury In Fact.

Plaintiffs must show more than a violation of a statute to establish they suffered a concrete harm and have standing to bring their claims. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."); *Spokeo, Inc.*, 578 U.S. at 341 (holding that a "bare procedural violation, divorced from any concrete harm" is not enough to support standing). Applying these principles, the Seventh Circuit has made clear that, though Congress can enact a statutory cause of action, that cause of action, standing alone, cannot "enact an injury into existence." *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022) (quoting *TransUnion*, 141 S. Ct. at 2205). That is, in addition to alleging a defendant violated some statutory provision, a plaintiff—as the party invoking the Court's jurisdiction—has the burden of showing the alleged violation caused the plaintiff some recognizable, concrete harm. *Id.* at 938–39 (plaintiff lacked standing to sue for monetary damages; allegations that defendant's statutory violations caused plaintiff "confusion" and "worry" did not amount to concrete harm).

Here, Plaintiffs claim, in part, they suffered "an informational injury when Walgreens failed to provide them with information to which he was entitled to by statute, namely a compliant COBRA election notice . . . ." (ECF 7 at ¶ 22.) Yet, an asserted informational injury that causes no adverse effects does not satisfy Article III. *TransUnion*, 141 S. Ct. at 2214 ("[T]he plaintiffs have identified no 'downstream consequences' from failing to receive the required

information. They did not demonstrate, for example, that the alleged information deficit hindered their ability to correct erroneous information before it was later sent to third parties.") (citation omitted); *Spokeo, Inc.*, 136 U.S. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation."); *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (no standing where plaintiff alleged defendant failed to give statutorily-required notice that debt must be disputed in writing; plaintiff never considered responding to debt collection letter at all, so notice violation caused no harm); *Aguilar v. Rexnord LLC*, No. 17 CV 9019, 2018 WL 3239715, at *3 (N.D. Ill. July 3, 2018) (Shah, J.) (dismissing for lack of Article III standing; statutory notice violation "without more" did not give rise to injury-in-fact). To establish standing, a plaintiff "must allege (and later establish) that the statutory violation harmed him 'or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'" *Larkin*, 982 F.3d at 1066 (quoting *Casillas*, 926 F.3d at 333).

Even if Plaintiffs are correct (and, as set out below, they are not) that Walgreens failed to provide a COBRA notice that met all of the regulatory requirements, their claims of "informational injury" would be insufficient to establish standing. Plaintiffs must be able to connect that claimed informational injury to some actual harm.

### B. Plaintiffs' Allegations of Economic Injury Are Entirely Conclusory and, in Any Event, Lack a Causal Connection to Walgreens' COBRA Notice.

Plaintiffs attempt to allege a "concrete" harm stemming from their purported informational injuries through only a series of vague, conclusory allegations of economic and other harms, such as "lost health insurance," "incurred medical bills," loss of "their ability to elect continuation coverage," and unspecified "stress and anxiety." (ECF 7 at ¶¶ 8, 18, 21, 60–65, 75–80, 90–95, 104–09.) Such generalized and conclusory allegations are insufficient to support a standing claim. *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the

5

elements of a cause of action will not do."); *Gerber v. A&L Plastics Corp.*, No. CV1912717ESCLW, 2021 WL 3616179, at *8 (D.N.J. Aug. 16, 2021) (noting a potential standing issue where Plaintiff "does not allege any concrete injury stemming from the lack of COBRA notice beyond alleging, in a conclusory fashion, non-descript 'financial harm' and 'emotional distress'").

Even without disregarding these conclusory allegations, however, Plaintiffs' complaint fails for lack of standing. All of Plaintiffs' purported harms stem from the premise that they lost health insurance coverage, and so had to pay medical bills out-of-pocket that would have otherwise been covered by health insurance. As a preliminary matter, Plaintiffs allege nothing about the amounts of the medical bills they each had to pay, or the premiums they would have had to pay had they elected continuation coverage. Their complaint, then, leaves open the possibility that those medical bills cost less than the premiums would have, such that Plaintiffs were not "harmed."

What's more, Plaintiffs cannot make any causal connection between their respective "loss" of health insurance coverage, and the purported deficiencies in Walgreens' COBRA notice. Article III requires that, in addition to being concrete, the Plaintiffs' alleged injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015) (requirement that injury is "fairly traceable" to the challenged conduct requires causal connection between the injury and the challenged conduct). As applied to this case, then, Article III requires that Plaintiffs establish they would have enrolled in continuation coverage had Walgreens provided a COBRA notice in the form they contend was required. The necessary causal chain is

6

far too attenuated, however, and the claim should be dismissed. *See Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 346 (7th Cir. 2022) (affirming dismissal for lack of standing, because plaintiffs' claims that they paid excessive prices were not fairly traceable to the defendant's conduct); *Plotkin v. Ryan*, No. 99 C 53, 1999 WL 965718, at *4 (N.D. Ill. Sept. 29, 1999), *aff'd*, 239 F.3d 882 (7th Cir. 2001) (finding claimed injury was not "fairly traceable" to alleged wrongdoing because "there are simply too many links in the chain of causation").

Here, though Plaintiffs claim they did not receive all of the notice information required in the regulations, the notice they attach to their Complaint says—at the beginning of its first page, under a heading that reads "Action Needed!"—enrollment in COBRA health coverage must be done by logging onto a website, or calling a phone number. (*See* ECF 7-1 at 1.) Plaintiffs do not allege any of them ever attempted to use the website or phone number to enroll in coverage. In that case, Plaintiffs' failure to attempt to enroll—and not any defect in the notice—would be the cause of their failure to obtain continuation coverage. If, as Plaintiffs claim, they "wanted to elect COBRA" (ECF 7 at ¶ 18), it strains credulity to think that—upon receiving a document labeled "COBRA Enrollment Notice"—they would not follow the "Action Needed!" to attempt to enroll in that coverage. *See Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 628 (5th Cir. 2021) (plaintiffs lacked standing where they could not establish that, if defendants had offered the investment option plaintiffs contend the law required, plaintiffs would have changed their own conduct so as to have actually invested in that option); *Bryant v. Wal-Mart Stores, Inc.*, No. 16-24818-CIV, 2020 WL 4333452, at *17 (S.D. Fla. July 15, 2020) (plaintiffs lacked standing because they could not show they would have enrolled in COBRA if provided the "missing" information).

Although Plaintiffs allege Walgreens failed to provide information on how to enroll, and did not attach a paper enrollment form, they acknowledge that the notice "directs plan

participants to a 'catch-all' general H.R. phone number to enroll in COBRA . . . ." (ECF 7 at ¶ 14.) Plaintiffs apparently contend that the average participant would need more detailed instructions to know how to enroll. But they do not allege that any plan participant—themselves included—who followed the instructions provided (that is, called 855-564-6153 or visited www.BenefitsSupportCenter.com) would have needed any further instruction to complete COBRA enrollment.

Plaintiffs' own complaint acknowledges that (1) they made an affirmative decision *not* to enroll in COBRA coverage, and (2) factors other than the alleged defects in the COBRA notice contributed to those decisions. (*See* ECF 7 at ¶¶ 66, 81, 96, 111 (alleging, as to each Plaintiff, that the COBRA notice "at least in part" caused Plaintiff's "decision not to enroll in COBRA coverage.").) Plaintiffs cannot claim the COBRA notice caused them harm, where they apparently made the conscious decision not to enroll in COBRA coverage, based on factors not limited to that notice.

The other alleged defects in the COBRA notice do not even relate to enrollment. For example, Plaintiffs say the "initial" notice they received did not have: (i) an address indicating where COBRA payments should be mailed; and (ii) did not identify the Plan Administrator. (ECF 7 at ¶ 47.) However, it is not clear how this alleged lack of information would interfere with the ability to elect continuation coverage in the first place. *See Carter v. Sw. Airlines Co.*, No. 8:20-CV-1381-T-02JSS, 2020 WL 7334504, at *5 (M.D. Fla. Dec. 14, 2020) (citing *Spokeo*, 136 U.S. at 1549) (where claimed deficiencies in COBRA notice would not have interfered with ability to elect COBRA coverage, they were "bare procedural violation[s], divorced from any concrete harm" and standing was lacking).

Moreover, Plaintiffs acknowledge that, in addition to the notice attached to their complaint, they each received a second document from Walgreens titled "Important Information About Your COBRA Continuation Coverage." (*See* ECF 7 at ¶ 7.) That document—which, like the first notice, states "[t]o elect continuation coverage, you must call the Benefits Support Center at 1-855-564-6153"—provides information about how a participant can submit payments for COBRA Coverage, including the address to which they should be mailed. (Dysinger Decl. Exs. B, D, F at 5–6.)

Plaintiffs further claim that the notice failed to provide the date by which Plaintiffs Flanary and Delcy were required to elect coverage, based on COVID-related extensions of the normal election periods. (ECF 7 at ¶¶ 15, 47.d, 122.)[1] As a preliminary matter, the COVID-related extension of any deadline is inapplicable to Plaintiff Delcy—who alleges she experienced a qualifying event in December 2018, long before any such extension would be relevant. (*See id.* at ¶ 84.) For Plaintiff Flanary, in addition to the normal COBRA notice sent by the Plan, and owing to the unique circumstances presented by the onset of the COVID-19 pandemic, Walgreens sent a supplemental notice, specifically alerting her to the extension of her enrollment deadline as a result of the pandemic. (*See* Dysinger Decl. ¶¶ 12–13, Ex. H.)[2] Like the other notice documents sent to Plaintiffs, this letter informed Plaintiff Flanary that she could call the Benefits Support center to complete COBRA enrollment. Having been sent that document, Plaintiff Flanary cannot claim to have been harmed based on Walgreens' failure to alert her to the COVID-related extension of her enrollment deadline; Walgreens plainly did so.

---

[1] The extension Plaintiffs rely on was issued as part of the Joint Notification of Extensions of Certain Timeframes for Employee Benefit Plans, Participants, and Beneficiaries Affected by the COVID-19 Outbreak, which was issued May 4, 2020. *See* 85 FR 26351 (May 4, 2020). (*See* Dysinger Decl. ¶ 8.)

[2] In deciding a factual attack on the sufficiency of Plaintiffs' allegations as to standing, the Court may consider evidence outside the pleadings. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020).

As discussed below, the documents Plaintiffs admit to having received contained all of the information the statute and regulations require, and provided clear instructions on how to enroll in COBRA coverage. Plaintiffs apparently elected not do so. Their claims now that Walgreens somehow caused them to make that decision in error are unsupportable. There simply is no causal connection between Plaintiffs' claims that they incurred uncovered personal medical expenses, and the allegation that Walgreens' COBRA notice was deficient. Plaintiffs' claims should be dismissed for lack of standing.

## II.    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM.

Plaintiffs' claims are based on ERISA § 606, 29 U.S.C. § 1166, and its requirement that eligible participants be given "written notice" of their COBRA continuation rights. They claim they are entitled to statutory penalties under ERISA or, in the alternative, that they should be retroactively awarded continuation coverage under the Plan, including reimbursement of incurred medical expenses. (*See* ECF 7 at ¶¶ 150–165.) Plaintiffs cannot state a claim, however, because their claims are time-barred and because they *admit* they received notice from Walgreens regarding their COBRA continuation benefits, and the documents they admittedly received comply with the applicable statutory and regulatory requirements.

### A.    Plaintiffs' Claims Are Time-Barred.

Plaintiffs allege Walgreens violated ERISA by failing to provide them with the required COBRA notice. From the face of the complaint, however, it is apparent that each Plaintiffs' claim is barred by the applicable two-year statute of limitations, because of their claims accrued prior to November 30, 2020. *See Clark v. City of Braidwood*, 318 F.3d 764, 766-767 (7th Cir. 2003) (acknowledging that "a plaintiff can plead [herself] out of court if [s]he alleges facts that affirmatively show that the suit is time-barred.").

Section 606 of ERISA does not contain an express statute of limitations, and thus the Court must look to the most closely analogous state law limitations period. *See e.g., Thompson v. Cont'l Cas. Co.*, 602 F. Supp. 2d 943, 945 (N.D. Ill. 2009) (under Illinois law, applying 2-year limitations provision to dismiss COBRA notice claim). Here, that is the two-year limitations period for actions against insurance producers, insurance representatives, and registered firms. *See id.*; *see also* 735 ILCS 5/13-214.4; *Baker v. Kingsley*, No. 03 C 1750, 2006 U.S. Dist. LEXIS 74266, at *18 (N.D. Ill. Oct. 10, 2006) (two year limitations period is most analogous); *Fritz v. Health & Welfare Dep't of Constr. & Gen. Laborers' Dist. Council of Chicago & Vicinity*, No. 99 C 4747, 2001 WL 34085714, at *3 (N.D. Ill. Apr. 6, 2001) (same); *Carter v. Gen. Elec. Co.*, No. 98 C 50239, 2000 U.S. Dist. LEXIS 3875, at *5 (N.D. Ill. Mar. 21, 2000) (same).

For violations of the notification provision of COBRA, a plaintiff's claim accrues no later than forty-five days after the triggering event—which is the statutory time period in which notice must be sent. *See Pierce v. Visteon Corp.*, No. 1:05CV1325 LJMJMS, 2007 WL 2986123, at *4 (S.D. Ind. Oct. 9, 2007) (claim of failure to provide COBRA notice accrues on date notice was required); *see also Piercefield v. Int'l Truck & Engine Corp.*, No. 1:05CV1873DFHWTL, 2006 WL 2263985, at *2 (S.D. Ind. Aug. 7, 2006) ("Piercefield's cause of action accrued no later than the forty-fifth day after his termination—when the notification period expired. His claim is barred by the two-year statute of limitations since he did not bring his claim until two years and three months after the termination, or 45 days after the two year statute of limitations expired.").

Plaintiffs allege they experienced qualifying events upon termination of their respective employment, on March 7, 2020 (ECF 7 at ¶¶ 54–55 (Plaintiff Bryant)), June 22, 2020 (*id.* at ¶¶ 69–70 (Plaintiff Flanary)), December 14, 2018 (*id.* at ¶¶ 84–85 (Plaintiff Delcy)), and February 5, 2019 (*id.* at ¶¶ 99–100 (Plaintiff Whaley)). Their claims, then, accrued *at the latest*

11

on August 6, 2020—forty-five days after Plaintiff Flanary's "qualifying event." This action, however, was not filed until November 30, 2022. (*See* ECF 1.) Because they waited more than two years after any of their claims accrued to bring suit, Plaintiffs' claims are untimely. *See Piercefield*, 2006 WL 2263985, at *2.

### B. The Manner in Which Plaintiffs Received Notice of Their COBRA Rights Complies with Applicable Law.

Throughout the Complaint, Plaintiffs make much ado about the claim that Walgreens' COBRA notice is not a single document, but rather "multiple documents, mailed separately." (*See, e.g.*, ECF 7 at ¶ 4.)[3] Plaintiffs admit, however, that in addition to the initial "COBRA Enrollment Notice" attached to their Complaint, they each also received a document labeled "Important Information About Your COBRA Continuation Coverage." (*See id.* at ¶¶ 6–7.) By Plaintiffs' own admission, that second document contains at least some of the information that Plaintiffs are now suing Walgreens for failing to provide to them. (*See* ECF 7 at ¶ 7.) That is, Plaintiffs argue that, to be compliant with the applicable regulations, Walgreens not only had to provide Plaintiffs with all specified information, but must have done so in a single document.

Nothing in ERISA, nor its attendant regulations, elevates the form of the required COBRA notice over its substance so as to require it be a single document, as Plaintiffs allege. *See* ERISA § 606; 29 C.F.R. § 2590.606-4(b)(4)(i-xiv). All that is required is that a COBRA notice "be sufficient to enable the discharged employee to make an informed and intelligent decision whether to elect continuation coverage." *Goodman v. Commercial Labor Servs., Inc.*, No. 98-CV-1816, 2000 WL 151997, at *3 (N.D.N.Y. Feb. 11, 2000). There is no reason such a standard *ipso facto* requires a single document. That the DOL offers a model notice comprised of

---

[3] Walgreens accepts the allegation that the notice documents were mailed separately as true only for purposes of this motion.

a single document, does not require an alternate conclusion. *See* 29 C.F.R. § 2590.606-4(g) (use of the model notice is "not mandatory").

Plaintiffs claim that the regulations—and specifically 29 C.F.R. § 2590.606-4(b)(4)(xii)—contemplate providing COBRA notice in a "single cohesive document," rather than in multiple documents designed to be read in conjunction with each other, such that the latter approach automatically amounts to a failure to provide the required notice. (*See* ECF 7 at ¶ 128.) Subsection (b)(4) of the regulation, however, contains no explicit single-document requirement, and instead speaks generally about the information that is required to be contained in "[t]he notice." *See* 29 C.F.R. § 2590.606-4(b)(4). When used in this context, the word notice should not be read to refer to the format of a single document, but instead to the "(l)egal notification required by law or agreement, or imparted by operation of law as a result of some fact." *See* "Notice," Black's Law Dictionary (10th ed. 2014).

Nothing in the regulations compels that the required COBRA notice information must be formatted so as to be contained within a single document. Any claim based solely on the existence of multiple documents designed to be read in conjunction with one another fails to state a claim upon which relief can be granted.

### C. Walgreens' Notice Contains All Required Information.

Beyond the format of Walgreens' notice, Plaintiffs claim that Walgreens violated the regulations by failing to meet certain specific elements of the regulations. As discussed below, each of those purported deficiencies in Walgreens' notice fails to state a claim.

#### 1. *Walgreens provided the address where COBRA payments should be mailed.*

Plaintiffs repeatedly allege that they could not make an informed decision whether to enroll in COBRA coverage because the notice failed to "include an address where COBRA

payments should be mailed." (ECF 7 at ¶¶ 6, 11, 47.a, 49, 51, 123–31). Plaintiffs, however, admit that—in the "Important Information About Your COBRA Continuation Coverage" document they each admittedly received—Walgreens *did* provide that information. (*See id.* at ¶ 128.) That document could not have been clearer, stating:

> **Payments should be sent to:**
>
> **WALGREENS**
> **PO BOX 1315**
> **CAROL STREAM IL 60132-1315**

(*See* Dysinger Decl. Exs. B, D, F at 6.) Because, as discussed above, Plaintiffs' argument that only the first document counts as part of the COBRA notice is not supported by the law, it is clear that the information Walgreens provided contained information on where COBRA payments should be sent.

2. <em>Walgreens told Plaintiffs when and how to enroll in COBRA.</em>

As discussed above, with respect to standing, much of Plaintiffs' claims are based on the flawed premise that the notice "fail[ed] to explain how to actually enroll in COBRA," (ECF 7 at ¶ 6, 14, 47.c, 49, 52, 121), in large part because it does not include a physical election form, when one is included with the model notice. (*Id.* at ¶¶ 6, 14, 49). Taking the second contention first, nothing in the applicable regulations requires that a COBRA notice include a physical election form. *See* 29 C.F.R. § 2590.606-4(b)(4)(i)–(xiv). Nor is the fact that the model notice includes one dispositive. *See* 29 C.F.R. § 2590.606-4(g) (use of the model notice is "not mandatory"). As with their claim that the notice must be provided as a single document, Plaintiffs are again attempting to hold Walgreens to a burden the law does not.

While it did not contain a paper enrollment form, the Walgreens notice did provide Plaintiffs with information on how to enroll in continuation coverage:

14

> **Action Needed!**
> You must enroll in COBRA health coverage by May 4, 2019 on Benefits Support Center at
> **www.BenefitsSupportCenter.com** or by calling the Benefits Support Center at 1-855-564-6153. If you don't enroll,
> you'll lose this opportunity.

(ECF 7-1 at 1.) While Plaintiffs apparently would have preferred a paper enrollment form, the notice contained what the regulation requires—"an explanation of the plan's procedures for electing continuation coverage." *See* 29 C.F.R. § 2590.606-4(b)(4)(v). What's more, the "Important Information" portion of the notice further stated—under the heading "**How Can You Elect COBRA Continuation Coverage?"—**that "COBRA enrollment elections must be made within 60 days of the date that coverage is lost or within 60 days of the statement date on the COBRA Enrollment Notice you receive, whichever is later," and re-iterated a participant should call the Benefits Support Center to enroll. (*See* Dysinger Decl. Exs. B, D, F at 4–5.)

Walgreens' COBRA notice informed Plaintiffs of the time period during which the election must be made, the date by which the election must be made, and that, in order to elect coverage, they needed to call the Benefits Support Center (at the toll-free phone number provided) or access the website (at the URL provided). These plain, unambiguous instructions meet the requirements of 29 C.F.R. § 2590.606-4(b)(4)(v).

Despite this, Plaintiffs claim the notice fails to provide an explanation of how to enroll in COBRA coverage, because they characterize the notice's instructions as merely directing participants to a "'catch-all' general H.R. phone number . . . operated by a third-party guised as the Walgreen benefits department." (Pl. Compl. ¶ 14.) This argument fails for two reasons.

First, Plaintiffs provide no legal or factual support for the contention that provision of a phone number and/or website URL operated by a third-party service provider cannot meet the requirements of 29 C.F.R. § 2590.606-4(b)(4)(v). Nothing in the regulations suggests (let alone dictates) that a toll-free telephone number or a website cannot be used as the means for electing

15

COBRA coverage. Even in the context of a motion to dismiss, such a bald, conclusory statement should not be accepted. *See Iqbal*, 556 U.S. at 662 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to . . . mere conclusory statements.").

Second, Plaintiffs appear to argue that, beyond providing instructions to call a specific, bolded phone number and/or to visit a specific, underlined website, the notice was required to provide additional, unspecified instructions as to how to complete enrollment. The law requires only that COBRA notices "be sufficient to enable the discharged employee to make an informed and intelligent decision whether to elect continuation coverage." *Goodman*, No. 98-CV-1816, 2000 WL 151997, at *3. Here, Walgreens' notice explained that the procedure to elect coverage, within the time frame specified, is to call the Benefits Support Center or to elect coverage via the internet. As a matter of law, this meets the *objective* standard set forth in the regulations. 29 C.F.R. § 2590.606-4(b)(4); *Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-cv-118-T-23JSS, 2017 WL 2191053, at *1 (M.D. Fla. May 18, 2017) ("Although [Plaintiffs] might not have understood the notice . . . [i]nsufficient facts support the conclusory statement that an 'average' plan participant cannot understand the notice."); *Wilson v. Sw. Bell Tel. Co.*, 55 F.3d 399, 407 (8th Cir. 1995) (applying an objective standard a requirement that Summary Plan Descriptions similarly be written in a manner calculated to be understood by the average plan participant). From the face of the notice, the average plan participant would understand that, to enroll in continuation coverage, they needed to call the Benefits Support Center or access it via the internet. Although the notice does not, for example, specify how to dial the phone, the instructions could not have been simpler. Plaintiffs' apparent preference for paper enrollment forms is not relevant to Walgreens' compliance with the statue.

3. *The notice sufficiently identified the party responsible for administering COBRA benefits.*

As part of their litany of purported deficiencies with Walgreens' notice, Plaintiffs claim the notice fails to identify the Plan Administrator or "the party responsible for administration of the plan (ECF 7 at ¶¶ 12, 47.b.) The regulations, however, require only that the COBRA notice identify "the party responsible under the plan *for the administration of continuation coverage benefits.*" *See* 29 C.F.R. § 2590.606-4(b)(4)(i) (emphasis added). Again, Walgreens' notice is wholly compliant with the regulation's requirement. Indeed, in both the COBRA Enrollment Notice and the Important Information About Your COBRA Continuation Coverage Rights document, Walgreens repeatedly identified the "Benefits Support Center," and provided interested participants information on how to contact it. (*See* ECF 7-1 at 1, 3, 4, 5; Dysinger Decl. Exs. B, D, F at 2, 4, 5, 8.) Although its use is not required, the Model Notice is instructive as to the identification of the entity responsible for administration of continuation coverage. In several places, that Model Notice requires identifying the relevant entity by name (as Walgreens did), but does not contain any suggestion that the entity be affirmatively identified as the "Plan Administrator" or any other title. *See, e.g.,* Model Notice (Ex. 1) at 7 ("If you have any questions about this notice or your rights to COBRA continuation coverage, you should contact [*enter name of party responsible for COBRA administration for the Plan, with telephone number and address*].").)

Plaintiffs do not allege the contact information for the Benefits Support Center is incorrect. Nor do they allege the Benefits Support Center was not the correct place for participants to contact to apply for COBRA benefits, or otherwise engage with respect to continuation coverage.

93121408v.4

Instead, Plaintiffs contend that the notice is deficient because it does not identify the entity Plaintiffs' contend was contracted to operate the "Benefits Service Center" (*i.e.*, Alight). Identification of that third-party, however, is not required by the regulations, and would serve to create more confusion, not less. The proper party to contact for COBRA-related items for the Plan is the Benefits Service Center, at the phone number or URL included in the notice. That phone number and URL are specific to the Benefits Service Center, the entity identified in the notice for participants to contact regarding COBRA benefits; they are not contact information for Walgreens or Alight, generally, which would not be useful.

Walgreens' notice satisfied the requirements of 29 C.F.R. § 2590.606-4(b)(4)(i) by identifying and providing contact information for the "party responsible for COBRA benefits." Plaintiffs' contentions to the contrary should be rejected.

> 4. *Plaintiffs' catchall allegations that Walgreens' notice would not be understood by the average plan participant are entirely conclusory.*

In addition to their specific contentions about alleged deficiencies in Walgreens' notice—which, as discussed above, each fail on their face—Plaintiffs repeat the conclusory assertion that the notice is not written in a manner "calculated to be understood by the average plan participant." (*Id.* at ¶¶ 7, 16, 47.e.) Absent the specific allegations, this allegation is nothing more than an unadorned quotation of the regulatory text, *see* 29 C.F.R. § 2590.606-4(b)(4), and cannot, standing alone, state any viable claim. *See Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. 555) (the first step in assessing a complaint's compliance with Rule 8 is to disregard "legal conclusions"). Plaintiffs' assertion is entirely conclusory, and should be disregarded.

III.   **WALGREENS' NOTICE DOES NOT CONFLICT WITH THE REGULATIONS AND, IN ANY EVENT, WALGREENS MADE A GOOD FAITH ATTEMPT TO COMPLY WITH THE REGULATIONS.**

Even where a plaintiff maintains there has been some technical failure as to a defendant's compliance with the COBRA notice requirements, courts have held that the defendant "complied with the statute if it acted in 'good faith.'" *Killis v. Medieval Knights, LLC*, No. 04 C 6297, 2007 WL 4302470, at *2 (N.D. Ill. Dec. 4, 2007) (quoting *Keegan v. Bloomingdale's*, 992 F. Supp. 974, 977 (N.D. Ill. 1998) ( "[A] good faith attempt to comply with a reasonable interpretation of the statute is sufficient to satisfy COBRA requirements.")).

Despite Plaintiffs' attempts to misconstrue the contents of Walgreens' notice and overstate the requirements in the applicable regulations, reading the documents in conjunction with each other—as Plaintiffs allege Walgreens intended them to be read (see ECF 7 at ¶ 128)— it is clear that Walgreens complied with the statute and regulations.

Still, in the event the Court believes questions exist as to Walgreens' compliance with certain technical requirements in the regulations, the case should still be dismissed because Plaintiffs fail to allege any facts to suggest Walgreens did not make a good faith effort to comply with its obligations. The Employee Benefits Security Administration ("EBSA") produced the Employer's Guide to Group Health Continuation Coverage under COBRA (the "EBSA Guide"), which describes the obligations of employers who are subject to COBRA. The EBSA Guide expressly states employers *may* use the model notice, and that the use of the model notice represents "good faith" compliance with COBRA's notice requirements. (*See* Ex. 2, EBSA Guide, at 6.) EBSA has similarly published the Final Regulations on the COBRA Notice Provisions of Part 6 of Title I of ERISA (the "EBSA Regulations"), which expressly states, "the Department would judge plan compliance with the COBRA statutory notice requirements under the standard set by the COBRA conference report: '[E]mployers are required to operate in good

19

faith compliance with a reasonable interpretation of these substantive rules, notice requirements, etc.'" (*See* Ex, 2, EBSA Regulations, at 10.) These statements make it clear the DOL imposes a good-faith standard of compliance, which Walgreens' notice meets.

Many courts—including courts in this district and elsewhere in this circuit—recognize the good faith standard. *See, e.g., Killis*, 2007 WL 4302470 at *2; *Keegan*, 992 F. Supp. At 977; *see also Pierce v. Visteon Corp.*, 843 F. Supp. 2d 936, 940 (S.D. Ind. 2011)("several other federal district courts . . . and at least two federal appellate courts [that a good faith attempt to comply] is sufficient to satisfy COBRA requirements."); *Crotty v. Dakotacare Admin. Servs.*, 455 F.3d 828, 830 (8th Cir. 2006) ("We agree that [a good faith attempt to comply] is the appropriate standard by which to judge compliance with § 1166(a)(4)(A)); *Ali v. Woodbridge Twp. Sch. Dist.*, No. CV 17-2210, 2019 WL 1930754, at *12 (D.N.J. Apr. 30, 2019), *aff'd*, 957 F.3d 174 (3d Cir. 2020) (granting summary judgment and stating that "Defendants have met their burden of demonstrating a good faith effort to notify Plaintiff of his rights in accordance with COBRA"); *Myrick v. Discover Bank*, 662 F. App'x 179, 183 (3d Cir. 2016) ((citing *Thomas v. Town of Hammonton*, 351 F.3d 108, 115 (3d Cir. 2003)) ("employers are required to operate in good faith compliance with a reasonable interpretation of what adequate notice entails").

Here, a simple review of Walgreens' notice efforts demonstrates that, as a matter of law, Walgreens made a good faith attempt to comply with the regulations. Plaintiffs cannot and have not alleged anything that could support a claim otherwise. Therefore, Plaintiffs' claims fail.

## <u>CONCLUSION</u>

For the foregoing reasons, Walgreens respectfully requests that this Court grant its Motion to Dismiss Plaintiffs' claims in their entirety.

93121408v.4

DATED: April 21, 2023                    Respectfully submitted,

                                         WALGREEN CO.


                                         By:  */s/ Thomas Horan*
                                               One of Its Attorneys

Ronald J. Kramer
rkramer@seyfarth.com
Thomas M. Horan
thoran@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
FACSIMILE: (312) 460-7000

Alex S. Drummond
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia  30309-3958
Telephone:  (404) 885-1500
Facsimile:  (404) 892-7056

Attorneys for Defendant
WALGREEN CO.

21

93121408v.4

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of April, 2023, I filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, via the Court's electronic filing system which will send notification of such filing to all counsel of record.

           */s/ Thomas M. Horan*
           Thomas M. Horan

93121408v.4