UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARIMA BRYANT, JOSHUA FLANARY, DIEUNIPHERE DELCY, and TELISA WHALEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREEN CO.,<br><br>Defendant. | No. 23 CV 1294<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Karima Bryant, Joshua Flanary, Dieuniphere Delcy,[1] and Telisa Whaley bring this putative class action pursuant to the Employee Retirement Income Security Act of 1974, as amended by the Consolidated Omnibus Reconciliation Act of 1985 (COBRA), against defendant Walgreen Co.

Walgreens moves to dismiss plaintiffs' amended complaint. [23].[2] For the reasons set forth below, the motion is denied in part and granted in part.

**I. Background**

COBRA requires sponsors of group health plans to permit "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying

---

[1] Plaintiffs state that they will file a notice of voluntary dismissal without prejudice as to Delcy's claims. [27] at 7 n. 1. Therefore, I do not address Delcy's claims here.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the amended complaint, [7].

event … to elect, within the election period, continuation coverage." 29 U.S.C. § 1161(a). The plan administrator must provide notice to qualified beneficiaries of their continuation of coverage rights upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4).

The Department of Labor issued regulations with notice content requirements. 29 C.F.R. § 2950.606-4(b)(4). The Department also provides a non-mandatory Model COBRA Continuation Coverage Election Notice, and "[u]se of the model notice, appropriately modified and supplemented, will be deemed to satisfy the notice content requirements." 29 C.F.R. § 2590.606-4(g).

When a plan administrator fails to meet the notice requirements, ERISA permits beneficiaries to sue the administrator for up to $110 a day from the date of such failure. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1. Under 29 U.S.C. § 1132(a)(1)(B), a beneficiary can also bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

This case involves alleged deficiencies in the two COBRA notices Walgreens sent to plaintiffs after termination from their employment, titled: first, "COBRA Enrollment Notice," and second, "Important Information About Your COBRA Continuation Coverage." [7] ¶¶ 6–8, 54–56, 69–71, 99–101. Plaintiffs allege that Walgreens failed to meet the regulatory requirements by sending two notices, instead of a single notice or using the model notice. [7] ¶¶ 4–7, 48, 128. Further, plaintiffs allege deficiencies in the notices Walgreens sent. In its first notice, Walgreens failed

2

to (1) provide the address to which payments should be sent; (2) identify the plan administrator; (3) explain how to enroll in COBRA and include a physical election form; (4) provide the correct election date; and (5) provide a notice written in a manner calculated to be understood by the average plan participant. [7] ¶ 47. Walgreens' second notice had the same deficiencies, other than including the payment address. [7] ¶¶ 7, 128. Plaintiffs allege that Walgreens' attempt to cure the deficiencies of its first notice with a second notice confused them. [7] ¶¶ 6–8, 53.

Without the required information and two notices, plaintiffs could not make an informed decision about health insurance and lost health coverage. [7] ¶ 53. Plaintiffs allege that the notice deficiencies caused them informational injuries and tangible economic injuries when they lost health insurance coverage and prescription benefits, incurred out of pocket medical expenses, lost control over their own medical treatment, and experienced stress and anxiety. [7] ¶¶ 60–67, 75–82, 105–112.

Plaintiffs bring two claims against Walgreens. First, plaintiffs claim that Walgreens' notices violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, entitling them to statutory penalties under 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day from the date of Walgreens' violation. [7] ¶¶ 150–60; [7] at 35. In the alternative, plaintiffs bring a claim under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to them under the Walgreens Health Plan and a declaration of rights clarifying these benefits. [7] ¶¶ 161–65.

**II.     Standing**

Walgreens first challenges plaintiffs' claims by arguing that plaintiffs lack Article III standing. The "irreducible constitutional minimum" to establish Article III standing requires three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Walgreens argues that plaintiffs' alleged informational injuries are not injuries in fact, plaintiffs' alleged economic injuries are conclusory, and that any deficiencies in Walgreens' notices are not fairly traceable to plaintiffs' alleged injuries. [23] at 10–16.

**A.     Injury in Fact**

"To establish injury in fact, a plaintiff must show that they suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). For an injury to be "concrete," it must be "real, and not abstract[;]" however, it need not be tangible. *Id.* at 340 (quotation omitted).

When the concreteness of an alleged injury is difficult to recognize, courts look to "history and the judgment of Congress" for guidance. *Id.* But an act of Congress that creates a statutory right and a private right of action to sue does not automatically create standing. *Id.* at 341. "Article III standing requires a concrete

4

injury even in the context of a statutory violation." *Id.* "[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

Walgreens does not contest that plaintiffs' alleged injuries of being unable to enroll in COBRA, losing health insurance, and incurring uncovered medical expenses are injuries in fact. [28] at 10. Instead, Walgreens argues that plaintiffs' alleged informational and economic injuries are insufficient or conclusory. [23] at 10–12; [28] at 10.

Informational injury that causes no adverse effects does not satisfy Article III. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021). There must be "downstream consequences from failing to receive the required information." *Id.* (quotation omitted). Plaintiffs plead those downstream consequences: the deficient notices prevented plaintiffs from enrolling in continued coverage and resulted in uncovered medical expenses. [7] ¶¶ 60–67, 75–82, 105–112. These are not legal conclusions nor the "formulaic recitation of the elements of a cause of action" as Walgreens asserts. [23] at 11–12 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). These allegations are facts that I accept as true at this stage. *See Lujan*, 504 U.S. at 561. A plaintiff is not required to plead the details of lost coverage or expenses, it is enough to plead that the harm occurred. *See id.* ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (quoting *Lujan v. Nat'l*

5

*Wildlife Fed'n*, 497 U.S. 871, 889 (1990))). And these harms are more than just allegations of the statutory violation of deficient notice. [7] ¶¶ 60–67, 75–82, 105–112.

### B. Traceability

Plaintiffs' alleged harms are fairly traceable to the deficient COBRA notices. Walgreens argues that "Article III requires that Plaintiffs establish they would have enrolled in continuation coverage had Walgreens provided a COBRA notice in the form they contend was required." [28] at 11. The Article III traceability requirement does not set such a high bar.

To establish Article III standing, plaintiffs must allege facts showing a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. The injury must "be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* at 560–61 (quotation omitted). However, "[s]tanding is not always lost when the causal connection is weak, and a defendant's actions need not be 'the very last step in the chain of causation.'" *Doe v. Holcomb*, 883 F.3d 971, 978 (7th Cir. 2018) (citing *Banks v. Sec'y of Ind. Family & Soc. Servs. Admin.*, 997 F.2d 231, 239 (7th Cir. 1993)) (quoting *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)); *see also Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) ("[T]he traceability requirement is less stringent than proximate cause."). Plaintiffs need "to allege only a causal connection between [their] injury and [defendant's] conduct, not that [defendant's] action is the *only* cause." *Chuluunbat v. Weltman, Weinberg & Reis Co., LPA*, No. 21-1584, 2022 WL 1599325, at *4 (7th Cir. May 20, 2022) (emphasis in original) (citing *J.B. v. Woodard*, 997 F.3d 714, 720 (7th Cir. 2021)).

6

Plaintiffs carry this low burden. Plaintiffs allege that they "originally wanted to elect COBRA but due, at least in part, to the missing information … were unable to do so." [7] ¶¶ 18, 50, 66, 81, 111, 129. Plaintiffs' inability to enroll in COBRA due to the deficient notices resulted in the loss of insurance coverage and medical bills, which are tangible injuries. [7] ¶ 18. Plaintiffs' allegations support a reasonable inference that if Walgreens' notices had provided all information required by the regulations, plaintiffs would not have lost their health and prescription coverage, incurred medical bills, nor experienced stress and anxiety. While plaintiffs do allege that their "decision[s] not to enroll in COBRA coverage was, at least in part" due to Walgreens' deficient notices, their allegations do not suggest that their injuries were "the result of the independent action of some third party not before the court." [7] ¶¶ 66, 81, 111; s*ee Lujan,* 504 U.S. at 560 (quotation omitted). Further, plaintiffs do not need to establish that Walgreens' deficient notices were the only cause of their injuries. *See Chuluunbat*, 2022 WL 1599325, at *4 (citing *J.B.*, 997 F.3d at 720). Plaintiffs need only to allege a causal connection between their injuries and Walgreens' deficient notices, which they have successfully done here. *See id.*

## III. Statute of Limitations

Walgreens also challenges plaintiffs' claims by arguing that their claims are time barred. [23] at 16–18.

"It is … 'irregular' to dismiss a claim as untimely under Rule 12(b)(6)." *Hollander v. Brown,* 457 F.3d 688, 691 n. 1 (7th Cir. 2006) (quoting *United States v. N. Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004)). "[A] complaint need not anticipate or

overcome affirmative defenses such as the statute of limitations." *Id.* (citing *Xechem, Inc. v. Bristol-Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir. 2004)). "As a result, a federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense." *Id.* However, a plaintiff can effectively "plead[] herself out of court by alleging facts that are sufficient to establish the defense." *Id.* (citing *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005)).

ERISA does not contain a statute of limitations for non-fiduciary duty claims such as those plaintiffs allege. *See Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 65 (7th Cir. 1996). Therefore, the most analogous Illinois statute of limitations is applied to each of plaintiffs' claims. *Id.*; *Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan,* 713 F.2d 247, 251 (7th Cir. 1983). The "'essence' of the federal claim in question" determines the most analogous cause of action in Illinois law. *Teumer v. Gen. Motors Corp.,* 34 F.3d 542, 546–47 (7th Cir. 1994) (citation omitted).

Walgreens argues that plaintiffs' § 1166 claim is subject to the two-year statute of limitations for actions against insurance producers, insurance representatives, and registered firms. [23] at 17. Plaintiffs argue that a ten-year statute of limitations for breach of contract applies to their § 1166 claim. [27] at 22. Plaintiffs fail to provide support for this argument, citing only to a case involving cancelled COBRA benefits, not a § 1166 claim for deficient notice. [27] at 22–23; *Barrett v. Microdynamics Corp.*, No. 12-cv-6108, 2014 WL 184741, at *1–3 (N.D. Ill. Jan. 16, 2014).

I agree with Walgreens that plaintiffs' § 1166 claim is subject to the analogous Illinois two-year statute of limitations, 735 Ill. Comp. Stat. 5/13-214.4. The claim is about compliance with a regulatory requirement imposed on insurance plan sponsors for the benefit of individuals who may lose coverage; it is analogous to a claim against an insurance provider concerning the renewal of insurance. *See Thompson v. Cont'l Cas. Co.*, 602 F.Supp.2d 943, 945 (N.D. Ill. 2009); *Carter v. Gen. Elec. Co.*, No. 98 C 50239, 2000 WL 321663, at *1 (N.D. Ill. Mar. 21, 2000); *Fritz v. Health & Welfare Dep't of Constr. & Gen. Laborers' Dist. Council of Chi. & Vicinity*, No. 99 C 4747, 2001 WL 34085714, at *3 (N.D. Ill. Apr. 6, 2001); *see also Lopez v. Premium Auto Acceptance Corp.*, 389 F.3d 504, 610 (5th Cir. 2004) (applying two-year limitations period of Texas unfair insurance practices statute to § 1166 action).

While the analogous Illinois limitation applies here, the federal common law still determines the accrual date of a cause of action. *Daill*, 100 F.3d at 65 (citing *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1138 (7th Cir. 1992)). Walgreens argues that the latest accrual date of the plaintiffs' claim was forty-five days after plaintiffs' termination—the last day that Walgreens could have provided sufficient notice and the day the penalty period begins. [23] at 17–18. Walgreens cites to two district court cases holding when "the alleged wrong is a failure to take some action in a timely way, such as giving notice, a claim for violating the duty to take that action accrues when the deadline for taking the action expires." *Piercefield v. Int'l Truck & Engine Corp.*, No. 05-cv-1873, 2006 WL 2263985, at *2 (S.D. Ind. Aug. 7, 2006) (citations

9

omitted); *Pierce v. Visteon Corp.*, No. 05-cv-1325, 2007 WL 2986123, at *4 (S.D. Ind. Oct. 9, 2007). Plaintiffs do not contest Walgreens' argument.

While the Seventh Circuit has not addressed accrual of § 1166 claims specifically, "the general federal common law rule is that an ERISA claim accrues when the plaintiff knows or should know of conduct that interferes with the plaintiff's ERISA rights." *Thompson v. Ret. Plan for Emps. of S.C. Johnson & Son, Inc.*, 651 F.3d 600, 604 (7th Cir. 2011) (quoting *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 817 (7th Cir. 2010)). Under this discovery rule, "a claim accrues once the party performs the alleged unlawful act and once the party bringing a claim discovers an injury resulting from this unlawful act." *Tolle*, 977 F.2d at 1139 (citation omitted); *see also Daill*, 100 F.3d at 66 (holding claims for benefits due under ERISA "accrue[] upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary.").

In a similar case involving deficient COBRA notice, the Eleventh Circuit held that a plaintiff's § 1166 claim did not accrue until "he learned from his lawyer that he should have received notice of his continuation right from [his previous employer]." *Cummings v. Washington Mut.*, 650 F.3d 1386, 1392 (11th Cir. 2011). The *Cummings* defendant, like Walgreens, argued that the § 1166 claim accrued as soon as the notification period expired. *Id.* at 1391. However, the court refused to apply the defendant's proposed accrual date, recognizing that the "COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage." *Id.* "To begin the statute of limitations

10

when the notification period expires … would create the possibility that the limitations period will run out before a plaintiff even knows he has been injured." *Id.* Accordingly, a COBRA notice claim "accrues when the plaintiff either knows or should know the facts necessary to bring an improper-notice claim: specifically, that his former employer has failed to provide him with the required notice of his continuation right." *Id.*

I find *Cummings* persuasive. Though plaintiffs have alleged they self-paid for medical treatment following their termination, simply knowing they were no longer covered under Walgreens' health insurance did not place them on notice of their injuries—that they were provided with deficient notice of continuing benefits. Plaintiffs had no reason to believe they were entitled by law to this information, and therefore, they had no reason to believe they sustained an injury for which they could seek redress. "[T]he mere expiration of the notification period … , without more, [i]s insufficient to give [plaintiffs] reason to know [their] notification right[s] had been violated." *Id.* at 1392.

Plaintiffs have not alleged facts that indicate when they had reason to know their notification rights were violated. Therefore, plaintiffs' § 1166 claim cannot be dismissed as time-barred at this stage. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial)." (citation omitted)).

Plaintiffs' 29 U.S.C. § 1132(a)(1)(B) claims are likewise not time barred. Claims under § 1132(a)(1)(B), seeking to recover benefits purportedly due under the terms of a benefits plan, "are creatures of contract law." *Jenkins*, 713 F.2d at 252. Therefore, the applicable statute of limitations to such claims is the Illinois ten-year statute of limitations for actions on a written contract, 735 Ill. Comp. Stat. 5/13-206. *Jenkins*, 713 F.2d at 253; *Daill*, 100 F.3d at 65. Plaintiffs allege that they experienced qualifying events in February 2019, March 2020, and June 2020. [7] ¶¶ 54–55, 69–70, 99–100. ERISA claims for benefits accrue when the plaintiff knows or should know of conduct that interferes with the plaintiffs' ERISA rights. *Thompson*, 651 F.3d at 604 (quoting *Young*, 615 F.3d at 817). Even if plaintiffs' § 1132(a)(1)(B) claims accrued at the earliest time possible (as soon as the notification period expired 45 days after plaintiffs' qualifying events), plaintiffs' 2022 filing was well within the ten-year statute of limitations. [1].

## IV. Motion to Dismiss for Failure to State a Claim

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

### A. Section 1166

Under 29 U.S.C. § 1166, when a plan participant has a qualifying event, the administrator must notify them of their rights to continued coverage. Notice must be:

> written in a manner calculated to be understood by the average plan participant and shall contain the following information: (i) ... the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits; ... (v) [a]n explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made; ... [and] (xii) ... the address to which payments should be sent.

29 C.F.R. § 2590.606-4(b)(4). When an administrator fails to comply with § 1166 and § 2590.606-4(b)(4), beneficiaries may seek penalties under 29 U.S.C. § 1132(c)(1).

Plaintiffs allege that Walgreens' notices did not comply with the regulations in five ways. [7] ¶ 47. First, plaintiffs allege that Walgreens failed "to identify the Plan Administrator." [7] ¶ 47. The regulations require that the notice identify "the party responsible under the plan for the administration of continuation coverage benefits." 29 C.F.R § 2590.606-4(b)(4)(i). Walgreens' notices included the contact information for the "Benefits Support Center," the entity responsible for continued coverage administration. [7] ¶ 133; [23] at 23. Plaintiffs do not allege that the Benefits Support Center was not the correct administrator. Plaintiffs concede in their opposition that their allegations relating to this aspect of the notice do not support a claim. [27] at 17. Therefore, plaintiffs' allegations that the notices failed to identify the Plan Administrator fail to state a § 1166 claim.

Second, plaintiffs allege that Walgreens failed to adequately explain the procedures for electing COBRA coverage as required by § 2590.606-4(b)(4)(v). [7]

13

¶¶ 47, 49, 52, 115. Plaintiffs allege that Walgreens' notices did not include a physical election form, which is included in the model notice. [7] ¶¶ 49, 120; [23-5]. Instead, the notices directed plaintiffs to a general phone number, operated by a third-party, that individuals could call with questions about anything benefit-related, with "no instructions on how to actually enroll if one calls the phone number." [7] ¶¶ 116–121. Walgreens argues that it did not need to provide anything further regarding the enrollment process. [23] at 20–22.

Plaintiffs point to three district courts that denied motions to dismiss when the plaintiffs there alleged that the challenged notices only directed them to "unhelpful" third-party websites and phone numbers to enroll in COBRA. [27] at 15–17 (citing *Gilbert v. Suntrust Banks, Inc.*, No. 15-80415-CIV, 2015 WL 11660244, at *2 (S.D. Fla. Sept. 18, 2015); *Riddle v. PepsiCo, Inc.*, 440 F.Supp.3d 358, 364 (S.D.N.Y. 2020); *Thompson v. Ryder Sys., Inc.*, No. 22-20552-CIV, 2022 WL 18776108 (S.D. Fla. Oct. 11, 2022)). But plaintiffs here do not allege how the contact information for a "catch-all" benefits administrator was unhelpful or failed to adequately explain how plaintiffs could enroll in COBRA. And although the model notice provides a physical election form, the regulations do not require a physical form, only "[a]n explanation of the plan's procedures for electing continuation coverage." 29 C.F.R. § 2590.606-4(b)(4)(v). Plaintiffs' allegations that the notices failed to adequately explain enrollment procedures in accordance with § 2590.606-4(b)(4)(v) are too conclusory to support a § 1166 claim. They simply parrot the regulation without any suggestion of how or why calling the phone number leads to an inadequate explanation.

14

Third, plaintiffs allege that the notices were not "written in a manner calculated to be understood by the average plan participant" as required by § 2590.606-4(b)(4). [7] ¶¶ 137–141. But plaintiffs allege little more than quoting the regulation to demonstrate how the average participant could not understand Walgreens' notices. Plaintiffs' conclusory allegations that the notices were not written in an understandable manner do not adequately state a § 1166 claim on this basis.

Fourth, plaintiffs allege that Walgreens' first notice failed to provide the address to which payments should be sent as required by § 2590.606-4(b)(4)(xii). [7] ¶¶ 47, 49, 123–31. Walgreens argues that it provided this information in the second notice and therefore, it followed the regulations. [23] at 19–20. Plaintiffs argue that the model notice, "which is a single cohesive document," demonstrates that the regulation "contemplates providing the statutorily required information in a COBRA 'notice' (singular) rather than in multiple documents (plural) which must then be read in conjunction with one another." [27] at 13.

The statute requires the administrator to "notify" qualified beneficiaries, 29 U.S.C. § 1166(a)(4), and does not limit notification to a single notice. So long as an administrator notifies a beneficiary of their rights "in accordance with regulations prescribed by the Secretary," it has complied with the statute. *See* 29 U.S.C. § 1166(a). The regulations refer to the required notice as singular. 29 C.F.R. § 2590.606-4(b)(1) (requiring administrators to furnish "a notice meeting the requirements of paragraph (b)(4)."); 29 C.F.R. § 2590.606-4(b)(4) ("The notice required by this paragraph (b).") Additionally, the model notice is one document,

15

suggesting that the regulations intend for beneficiaries to receive all the required information simultaneously. *See* 29 C.F.R. § 2590.606-4(g); *see also Riddle*, 440 F.Supp.3d. at 363 (finding the defendant's use of multiple notices "may be non-compliant with the regulations" because "the regulations provide for 'a *notice* meeting the requirements,' not multiple notices." (emphasis in original)); *Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-CV-118-T-23JSS, 2017 WL 2191053, at *2 (M.D. Fla. May 18, 2017) (holding defendant's omission of payment address was non-compliant with the regulations despite the notice stating the payment address would be provided after COBRA election). But the regulations also refer to "notice" generally, without a definite article. *See* 29 C.F.R. § 2590.606-4(a). The regulations do not require use of the model notice. 29 C.F.R. § 2590.606-4(g) ("Use of the model notice is not mandatory"). Nowhere in § 2590.606-4 does the agency expressly prohibit piecemeal notice, and it acknowledges "notices," plural, in § 2590.606-4(f) ("The notices required by this section …").

Notwithstanding the references to "a notice" and "the notice," I conclude that the regulations do not prohibit multiple notices. The statute does not prohibit it either. Multiple notices can be in accord with the content required by the regulations. An administrator who has timely conveyed all the required information, in understandable language, has complied with the regulations and the statute. While Walgreens' first notice failed to provide the payment address, its second notice included this information, fulfilling Walgreens' obligation under the statute and

16

regulations. [7] ¶ 128. Thus, plaintiffs fail to state a § 1166 claim on the basis that the first notice did not provide the payment address.

Finally, plaintiff Flanary, whose employment was terminated in June 2020, alleges that the enrollment notice sent to him provided an inaccurate enrollment deadline due to the government's extension of enrollment deadlines during the pandemic.[3] [7] ¶¶ 15, 47, 69, 122. Section 2590.606-4(b)(4)(v) requires the inclusion of "an explanation of the time period during which the election must be made, and the date by which the election must be made." Flanary's allegation that his notice had the wrong enrollment period and deadline is enough to state a § 1166 claim.[4]

## B.   Section 1132(a)(1)(B)

Under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary can bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Plaintiffs alternatively bring a § 1132(a)(1)(B) claim, anticipating "Walgreens w[ould] likely argue that this claim is somehow governed by the Walgreens Health

---

[3] Walgreens argues that it sent Flanary a supplemental notice with the extended deadline. [23] at 15 n. 1; [23-11] ¶¶ 8–11. Because plaintiffs do not plead these additional details, I cannot consider the supplemental notice at this stage. *See Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) ("[W]hen adjudicating a motion to dismiss … a district court is limited to the allegations in the complaint." (citing *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997))).

[4] Walgreens argues it should not be liable because it made a good faith effort to comply with the regulations. [23] at 25–26. Plaintiffs allege that Walgreens knowingly provided deficient notices. [7] ¶¶ 128, 157–159. Even if plaintiffs had not alleged Walgreens' knowledge of the notice deficiencies, "[c]omplaints need not contain *any* information about defenses and may not be dismissed for that omission." *Xechem*, 372 F.3d at 901 (emphasis in original). Walgreens' invocation of a good faith defense is unavailing at this early stage of proceedings.

Plan." [7] ¶¶ 44, 162. Plaintiffs seek to recover benefits due to them under the plan and a declaration of rights clarifying these benefits. [7] ¶¶ 161–65. But plaintiffs have not alleged any details regarding the Walgreens Health Plan nor how the allegedly deficient notices relate to benefits under the terms of the plan. Further, plaintiffs make no allegations regarding what benefits are due to them or what rights they are entitled to enforce under the plan.

With no allegations related to any benefits or rights plaintiffs are entitled to under the plan terms, plaintiffs have failed to plausibly allege a § 1132(a)(1)(B) claim.

## V. Conclusion

Plaintiffs have adequately pled a § 1166 claim by alleging that Walgreens failed to provide Flanary with the correct enrollment deadline. The remainder of the § 1166 claim is dismissed without prejudice, as is any § 1132(a)(1)(B) claim.[5] Defendant must answer the complaint by September 19, 2023. The parties must confer and file a joint status report with a proposed case schedule by September 26, 2023.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: August 29, 2023

---

[5] *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 310 (7th Cir. 2018) ("Ordinarily ... a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015))).